**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

ZAKIA MASHIRI,
               *Plaintiff-Appellant*,

        v.

EPSTEN GRINNELL & HOWELL;
DEBORA M. ZUMWALT; DOES 1–25,
          *Defendants-Appellees.*

</td>
<td>

No. 14-56927

D.C. No.
3:14-cv-00839-
JLS-RBB


OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted October 4, 2016
Pasadena, California

Filed January 13, 2017

Before: Dorothy W. Nelson and Richard A. Paez, Circuit
Judges, and Elaine E. Bucklo,* District Judge.

Opinion by Judge Paez

---

*\* The Honorable Elaine E. Bucklo, United States District Judge for
the Northern District of Illinois, sitting by designation.*

## SUMMARY[**]

**Fair Debt Collection Practices Act**

The panel reversed the district court's dismissal for failure to state a claim of an action under the Fair Debt Collection Practices Act.

The plaintiff alleged that the defendant sent her a debt collection letter demanding payment of an assessment fee from her homeowners' association. The panel held that the plaintiff stated plausible claims for relief because the collection letter contained language that overshadowed and conflicted with her FDCPA debt validation rights under 15 U.S.C. § 1692g when reviewed under the "least sophisticated debtor" standard.

The panel rejected the defendant's argument that in sending the collection letter, it merely sought to perfect a security interest and was therefore subject only to the limitations in 15 U.S.C. § 1692f(6).

## COUNSEL

Asil Marhiri (argued), Mashiri Law Firm, San Diego, California, for Plaintiff-Appellant.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Anne Lorentzen Rauch (argued), Mandy D. Hexom, and Rian W. Jones, Epsten Grinnell & Howell APC, San Diego, California, for Defendants-Appellees.

**OPINION**

PAEZ, Circuit Judge:

Zakia Mashiri ("Mashiri") appeals the dismissal of her complaint alleging that the law firm of Epsten Grinnell & Howell and attorney Debora M. Zumwalt (collectively, "Epsten") committed unlawful debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code §§ 1788 *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. Mashiri alleges that Epsten sent her a debt collection letter in May 2013 demanding payment of an assessment fee from her homeowners' association. She alleges that the letter contained language that overshadowed and conflicted with her FDCPA right to thirty days in which to dispute the debt. On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Mashiri's FDCPA claims, concluding that the collection letter satisfactorily explained her right to dispute the debt and therefore did not improperly threaten to record a lien. Because Mashiri's state law claims were dependant on her FDCPA claims, the court also dismissed Mashiri's Rosenthal Act and Unfair Competition Law claims.

We hold that the district court erred. Mashiri has alleged a plausible claim for relief because the collection letter

contains language that overshadows and conflicts with her FDCPA debt validation rights when reviewed under the "least sophisticated debtor" standard. We also reject Epsten's argument, raised for the first time on appeal, that in sending the collection letter, it merely sought to perfect a security interest and is therefore subject only to the limitations in § 1692f(6). We hold that Epsten is subject to the full scope of the FDCPA. We reverse and remand for further proceedings consistent with this Opinion.

## I.

Mashiri alleges that she owns a home in San Diego, California and is a member of the Westwood Club homeowners' association ("HOA").[1] As a member, Mashiri incurs annual assessment fees. Mashiri failed to pay in a timely manner the $385 fee assessed in July 2012.

In a collection letter dated May 1, 2013 (the "May Notice"), Epsten, on behalf of the HOA, sought to collect Mashiri's overdue assessment fee, as well as corresponding late, administrative, and legal fees. The May Notice also included a warning that failure to pay the assessment fee would result in the HOA recording a lien against Mashiri's property. This notice is required by section 5660 of the Davis-Stirling Common Interest Development Act, Cal. Civ. Code §§ 4000 *et seq.*, which governs the collection of

---

[1] The facts are derived from the complaint and its accompanying exhibits, as well as documents that the district court judicially noticed.

overdue homeowners' association assessments.[2]   The May Notice stated, in pertinent part:

> This letter is to advise you that **$598.00** is currently owing on your Association assessment account.  Failure to pay your assessment account in full within thirty-five (35) days from the date of this letter will result in a lien being recorded against your property upon authorization of the Board of Directors.  All collection costs incurred will be charged to your account.
>
> **Unless you notify this office within 30 days of receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within thirty (30) days of receiving this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you (if applicable) and a copy of [] such verification or judgment will be mailed to you.**

---

[2] The Davis-Stirling Act "consolidated the statutory law governing condominiums and other common interest developments." *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 183 (Cal. Ct. App. 2007) (internal quotation marks omitted).  In enacting the Davis-Stirling Act, the California legislature "intended to protect homeowners from being foreclosed upon for small sums of delinquent assessments." *Huntington Cont'l Town House Ass'n v. Miner*, 167 Cal. Rptr. 3d 609, 612 (Cal. App. Dep't Super. Ct. 2014).

. . . .

You have the right to inspect the association records pursuant to Corporations Code Section 8333. You may submit a written request to meet with the Board to discuss a payment plan for this debt. You shall not be liable to pay the charges, interest and costs of collection if it is determined the assessment was paid on time to the Association. You have the right to dispute the assessment debt by submitting a written request for dispute resolution to the association pursuant to the association's "meet and confer" program required in Civil Code Section [5900] et seq., and the Board offers to participate in dispute resolution. You have the right to request alternative dispute resolution with a neutral third party pursuant to Civil Code Section [5925] et seq. before the association may initiate foreclosure against your separate interest, except that binding arbitration shall not be available if the association intends to initiate a judicial foreclosure.

. . . .

**IMPORTANT NOTICE: IF YOUR SEPARATE INTEREST IS PLACED IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR ASSESSMENTS, IT MAY BE SOLD WITHOUT COURT ACTION.**

. . . .

**This is a communication from a debt collector attempting to collect a debt and any information obtained will be used for that purpose.**

Accompanying the May Notice, Epsten included copies of Mashiri's account statement and the HOA's assessment collection policy.

On or about May 20, 2013, in a letter to Epsten, Mashiri disputed the debt and requested that Epsten validate it. Mashiri also stated that she never received a bill for the July 2012 assessment fee. Approximately two weeks later, on June 5, Epsten responded with another copy of Mashiri's account statement.

On June 18, 2013, Epsten, on behalf of the HOA, recorded a lien on Mashiri's property in the amount of $928, reflecting the $598 she previously owed and $330 in additional legal fees. Three days later, on June 21, Mashiri sent the HOA a check for $385. In a letter accompanying the check, Mashiri disputed the balance of the debt. As required by the Davis-Stirling Act, on June 24, Epsten notified Mashiri of the lien. Cal. Civ. Code § 5675(e).

Mashiri ultimately filed her complaint alleging violations of the FDCPA, the Rosenthal Act, and the Unfair Competition Law based on the contents of the May Notice. Epsten subsequently moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court granted Epsten's motion to dismiss, concluding, *inter alia*, that the May Notice

"complied with the clarity and accuracy requirements" of the FDCPA and therefore "did not threaten to take action that could not legally be taken" as prohibited by the FDCPA. The district court dismissed Mashiri's state law claims as dependant on her FDCPA claims. Mashiri timely appealed.

## II.

We review de novo a dismissal under Rule 12(b)(6). *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016). For purposes of our review, we accept the complaint's well-pleaded factual allegations as true and construe all inferences in favor of Mashiri. *Id.* The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). In furtherance of these stated goals, "[t]he FDCPA subjects 'debt collectors' to civil damages for engaging in certain abusive practices while attempting to collect debts." *Ho v. ReconTrust Co., NA*, 840 F.3d 618, 620 (9th Cir. 2016).

Mashiri challenges the district court's ruling that she did not allege a plausible violation of § 1692g of the FDCPA, and its corresponding dismissal of the § 1692e(5) and state law claims that depended on her § 1692g claim. *See* 15 U.S.C. § 1692g. She argues that the May Notice violated § 1692g for two reasons. First, she contends that the May Notice demanded payment sooner than the expiration of the debtor's thirty-day dispute period. Second, she claims that by threatening to record a lien within thirty-five days, irrespective of whether she disputed the debt, Epsten failed to explain effectively a debtor's right to dispute the debt. Epsten counters that it was not attempting to collect a debt and therefore the May Notice needed to comply only with the obligations in § 1692f(6) of the FDCPA relating to enforcement of security interests. Epsten further argues that even if it is subject to § 1692g, it complied with the statutory requirements. We turn first to whether Epsten is subject solely to § 1692f(6), and then discuss whether Mashiri has sufficiently alleged a violation of § 1692g and related claims.

## A.

For the first time in its answering brief, Epsten argues that it is subject only to § 1692f(6)[3] because it sent the May

---

[3] Section 1692f(6) prohibits:

Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if–

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

Notice to perfect the HOA's right to record an assessment lien against Mashiri's property under California Civil Code section 5660. "Ordinarily, we decline to consider arguments raised for the first time on appeal." *Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2003). We have, however, recognized an exception where "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004) (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)). Here, Epsten presents a legal issue concerning the applicability of FDCPA provisions when a debt collector seeks, in part, to perfect a security interest and preserve the creditor's right to record a lien. The pertinent facts, including the communications between Epsten and Mashiri, are not disputed. In addition, Mashiri responded to Epsten's argument in her reply brief and therefore suffers no prejudice if we consider the argument. *See Dream Palace*, 384 F.3d at 1005. Accordingly, we address the issue.

The FDCPA defines "debt" as "*any* obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis supplied); *see also Ho*, 840 F.3d at 621 ("For the purposes of the FDCPA, the word 'debt' is

<hr>

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

synonymous with 'money.'"). "The FDCPA imposes liability only when an entity is attempting to collect debt." *Ho*, 840 F.3d at 621.

The contents of the May Notice plainly belie Epsten's contention that it did not attempt to collect a debt. The May Notice requested payment of Mashiri's homeowner's assessment fee, stating: "This letter is to advise you that **$598.00** is currently owing on your Association assessment account. *Failure to pay* your assessment account in full within thirty-five (35) days from the date of this letter will result in a lien being recorded against your property." *See supra* at 5 (emphasis added). Mashiri's obligation to pay the assessment fee relates to her household and arises from her membership in the HOA. The overdue assessment fee is a debt under § 1692a(5).

Epsten nonetheless argues that, based on the definition of a "debt collector" under § 1692a(6),[4] entities engaged in the enforcement of security interests are subject only to § 1692f(6). There was, however, no existing security interest for Epsten to enforce at the time it sent the May Notice

---

[4] Section 1692a(6) provides, in pertinent part:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

because a lien had yet to be recorded against Mashiri's property. Rather than seeking to *enforce* an existing security interest or lien, the May Notice sought to collect Mashiri's overdue assessment fee and to make necessary disclosures that would perfect the HOA's security interest and permit it to record a lien at a later date. *See* Cal. Civ. Code § 5660 (providing that "[a]t least 30 days prior to recording a lien upon the separate interest of the owner of record to collect a debt that is past due under Section 5650, the association shall notify the owner of record in writing by certified mail" of specified information).[5]

In addition, Epsten's interpretation of § 1692a(6) is incorrect. As we recently observed in *Ho*, "[i]f entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors." 840 F.3d at 622. *Ho* addressed whether a trustee's communications—limited solely to pursuing non-judicial foreclosure—were debt collection activities for purposes of the FDCPA. *Id.* at 619–20, 623. In contrast to this case, the trustee sought to enforce a secured loan and sent a notice of default that did not request payment but instead "merely informed Ho that the foreclosure process had begun, explained the foreclosure timeline, apprised her of her rights and stated that she could contact [the lender] (not [the trustee]) if she wished to make a payment." *Id.* at 623. We held that where an entity is engaged solely in the enforcement of a security interest and not in debt collection, like the trustee and unlike Epsten, it is

---

[5] We also note that the Rosenthal Act, which functions as "the state analogue of the FDCPA," does not exempt homeowners' associations attempting to collect overdue assessment fees pursuant to California Civil Code § 5660. *See Ho v. ReconTrust Co., NA*, 840 F.3d 618, 623 n.8 (9th Cir. 2016).

subject only to § 1692f(6) rather than the full scope of the FDCPA. *See id.* at 622 ("We do *not* hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests. . . . We hold only that the enforcement of security interests is not always debt collection.").

Because Epsten sent the May Notice as a debt collector attempting to collect payment of a debt—irrespective of whether it also sought to perfect the HOA's security interest and preserve its right to record a lien in the future—it is subject to the full scope of the FDCPA, including § 1692g and § 1692e. *See id.* Epsten's attempt to escape liability under § 1692g and § 1692e therefore fails.

**B.**

As noted above, Mashiri argues that she alleged a violation of § 1692g on two grounds. First, she argues that the May Notice requested payment by a date that was inconsistent with a debtor's right to dispute the debt within thirty days from receipt of the notice. Second, she argues that Epsten's threat to record a lien within thirty-five days of the date of the letter overshadowed her right to dispute the debt. We address each of these arguments below, and hold that Mashiri has alleged a plausible § 1692g violation on both grounds.

The FDCPA requires a debt collector to send the debtor a written notice that informs the debtor of the amount of the debt, to whom the debt is owed, her right to dispute the debt within thirty days of receipt of the letter, and her right to

obtain verification of the debt.[6]  Because the notice must inform the debtor of her right to obtain verification of the debt, the notice is commonly referred to as a "validation" notice.  However, "[t]he statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

Importantly, notice of the debtor's right to dispute the debt and to request the name of the original creditor must not be overshadowed or inconsistent with other messages

---

[6] Section 1692g(a) provides that the debt collector must notify the debtor of the following:

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

appearing in the communication.[7]   15 U.S.C. § 1692g(b). Overshadowing or inconsistency may exist where language in the notice would "confuse a least sophisticated debtor" as to her validation rights.  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).  In other words, "[u]nder the law of this circuit, whether the initial communication violates the FDCPA depends on whether it is likely to deceive or mislead a hypothetical 'least sophisticated debtor.'"  *Id.* at 1431 (internal quotation marks omitted).

## 1.

Turning to Mashiri's first basis for a § 1692g violation, Mashiri claims that the May Notice did not provide a debtor thirty days in which to dispute the debt.  We have previously observed that a § 1692g violation would result if a debt collector demanded payment prior to the expiration of the thirty-day dispute period to which debtors are entitled.  As we explained in *Terran*:

> A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to [forgo] the statutory right to challenge the debt in writing within thirty days, or suffer the consequences.  For this reason, requiring a payment that would eliminate the debt before the debtor can

---

[7] The terms "overshadowing" and "inconsistent" are often used interchangeably.  *See, e.g.*, *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014) ("We note at the outset that, in the section 1692g milieu, courts do not always distinguish between violations based on the overshadowing of a validation notice and violations based on inconsistencies.").

challenge the validity of that debt directly
conflicts with the protections for debtors set
forth in section 1692g.

*Id.* at 1434.

In this case, the May Notice demanded payment within
thirty-five days of the *date* of the letter, which is inconsistent
with a debtor's right to dispute a debt within thirty days of
*receipt* of the letter. By the time a debtor receives such a
letter, there may be fewer than thirty days before payment is
due.[8]   Moreover, even if the debtor received the letter
promptly, in order for the payment to be received within
thirty-five days of the date of the letter, the debtor would
likely need to mail the payment prior to the thirtieth day of
the dispute period. *See Chauncey v. JDR Recovery Corp.*,
118 F.3d 516, 519 (7th Cir. 1997). The least sophisticated
debtor, when confronted with such a notice, would reasonably
forgo her right to thirty days in which to dispute the debt and
seek verification. The infringement of the debtor's right to
thirty days in which to dispute the debt plausibly violates
§ 1692g. *See Terran*, 109 F.3d at 1434.

---

[8] Although Epsten asks us to take judicial notice of a certified mail
receipt showing that Mashiri received the May Notice on May 2, 2013, the
district court did not consider the certified mail receipt, and we decline to
do so as well. The date on which Mashiri received the May Notice is
irrelevant because we undertake an "*objective* analysis that takes into
account whether the least sophisticated debtor would likely be misled by
a communication." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015,
1017 (9th Cir. 2012) (emphasis added and internal quotation marks
omitted).

## 2.

Mashiri alleged a plausible § 1692g violation for the additional reason that the least sophisticated debtor may not understand, on the basis of the May Notice, that upon notifying Epsten of a dispute, debt collection activities would "cease . . . until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector."   15 U.S.C. § 1692g(b). Rather, the May Notice stated that a lien "will" be recorded if Mashiri "fail[ed] to pay."   The least sophisticated debtor would likely (and incorrectly) believe that even if she disputed the debt and Epsten had not yet mailed verification of the debt to her, Epsten would record a lien on the thirty-fifth day after the date of the letter.   "In this manner, the letter effectively overshadows the disclosed right to dispute by conveying an inaccurate message that exercise of the right does not have an effect that the statute itself says it has." *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 105 (1st Cir. 2014).

Epsten relies on *Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011 (11th Cir. 2004) (per curiam) for the proposition that, upon receipt of a request for debt verification, the FDCPA does not require a debt collector to take affirmative action to stop the recording of a lien that had already been filed.   That case, however, correctly recognizes that "sending a lien to the clerk of the court [for filing] *after* a verification of the debt was requested is clearly contrary to § 1692g(b)'s requirement that a debt collector shall 'cease collection of the debt' once the verification is requested."   *Id.* at 1014.   In addition, *Shimek* is factually inapposite because "[u]nder Georgia law, the filing of a lien by a creditor is a necessary step for securing payment of a debt," and the

Eleventh Circuit "assum[ed] the propriety of filing the lien with the Court Clerk contemporaneously with the demand letter." *Id.* at 1013–14. In California, pursuant to the Davis-Stirling Act, a homeowners' association may not record a lien with a county recorder's office contemporaneously with mailing the demand letter, but instead must provide notice of the debt at least thirty days prior to recording a lien, during which time a debtor-homeowner may dispute the debt. Cal. Civ. Code § 5660.

The obligations imposed on the HOA pursuant to the FDCPA, including the provision requiring suspension of debt collection activities pending debt verification, are thus consistent with the requirements the HOA must satisfy pursuant to the Davis-Stirling Act. The HOA's right to record a lien thirty days after providing notice under section 5660 is not absolute, but instead is dependent on whether the homeowner disputes the debt. Indeed, pursuant to the Davis-Stirling Act, if the homeowner disputes the debt and requests an informal dispute resolution proceeding, the HOA must participate in dispute resolution "prior to recording a lien." Cal. Civ. Code § 5670.

In this context, the threat of recording of a lien is a debt collection activity, which under the FDCPA must cease if the debtor-homeowner disputes the debt and the debt collector has not yet mailed verification of the debt to the debtor-homeowner. The Davis-Stirling Act does not mandate otherwise. Epsten was obligated to explain such debt validation rights in an effective manner. *See Swanson*, 869 F.2d at 1225. In failing to do so, the threat of filing a lien overshadowed Mashiri's right to dispute the debt, in violation of § 1692g. Because Mashiri has plausibly alleged a violation of § 1692g on the basis of inconsistency and

overshadowing, we reverse the district court's dismissal of that claim.

## IV. Conclusion

We hold that Mashiri has plausibly alleged a claim under § 1692g, and we reverse the district court's dismissal of that claim.  Because we reverse the district court's dismissal of Mashiri's § 1692g claim, we reverse the district court's dismissal of Mashiri's claims that depended on § 1692g and arose under § 1692e(5), the Rosenthal Act, and the Unfair Competition Law.[9]

**REVERSED and REMANDED.**

---

[9] To the extent Mashiri asserted claims under § 1692e, the Rosenthal Act, or the Unfair Competition Law on grounds unrelated to her § 1692g claim, Mashiri does not challenge the district court's dismissal of those claims.